Court. Before we begin our routine proceedings for today, we have two motions, one by each member of the panel. I'll turn to Judge Clevenger first. Thank you very much. So the business at hand is the process by which we receive applications of lawyers who want to become members of the Bar of this Court. The way it works is that there's a movement who moves the admission of the candidate in question, that's me in this case, and then the court decides whether or not to grant the motion. So I move the admission of Hannah Lauren Bernard, who is a member of the Bar and is in good standing with the highest court in the Commonwealth of Virginia. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications. I can say that because for the last almost 12 months, she has been one of my law clerks, served me and served this court with dedication and great talent. She will be missed as a participating member of this court, member of the court family, and we will look forward to her coming back here, assuming that my two colleagues think that she should be admitted to the Bar. I recuse myself because I've already let you know why my thumb is already on the scale. So moved. Well, with the concurrence of Judge Stoll, we enthusiastically grant the motion. And now, before we proceed to the oath, I'll turn to Judge Stoll for her motion. I also have a motion this of Lance Wyatt, who is a member of the Bar and is in good standing with the highest court of Texas. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. I can say this because Lance has served admirably as a law clerk in my chambers for the past year. I have thoroughly enjoyed working with him and value the enthusiasm, humor, calm manner, excellent writing and efficiency that he brought to chambers. We will all miss him when he returns to Texas, but I trust he will make an excellent addition to the Bar and I look forward to seeing him hopefully before this court. Judge Clevender? Again, on behalf of Judge Clevender and myself, we enthusiastically grant the motion. Would you please rise? Judge Ryan Hanson, do you solemnly swear that you will comport yourself as an attorney and counselor at this court uprightly and according to law, and that you will support the United States Constitution? I do. Thank you. First case for argument this morning is 16-2263, Wade v. United States. Mr. Herzfeld, whenever you're ready. Good morning. May it please the court. Substantial evidence supports the Board for Correction of Naval Records' three decisions of pulling the Navy's non-judicial punishment and discharge of Mr. Wade for knowing and wrongful use of cocaine. The trial court improperly reweighed the facts and conducted a de novo review actually determining whether Mr. Wade was innocent or guilty. We respectfully request that this court reverse the trial court's decision with instructions to enter judgment in favor of the United States. We believe that substantial evidence supported the Navy's multiple decisions finding that Mr. Wade knowingly and wrongfully used cocaine. He received non-judicial punishment. Mr. Wade's commanding officer had the positive urinalysis, 482 nanograms, which was 5. What happens hypothetically in a case where someone's caught and nobody's questioning the veracity of the test, the correctness of the test, but someone says, I just didn't do it, so I must have been duped. Someone tricked me. I must have been duped, I swear. But he can't recreate when or how he was duped. I was at a party with 100 people, that must have been where I was duped. Is that never sufficient to overcome the presumption? Is that a matter of credibility that if people believe him crying that he was duped, that's sufficient? How does this work? That is exactly right, Your Honor. It becomes a question for the trier of fact, and here that would be the separation board would be the commanding officer and the non-judicial punishment where there was no defense. In the system, I didn't do it, and he offered some character witnesses. That is frequently how it plays out. But under the standard of proof that even in court martial where it's higher level than here, where it was a preponderance of the evidence because these were administrative proceedings, in a court martial proceeding, usually what happens, and you said presumption, it's important to remember this is not a presumption. It's actually the permissive inference that's used for your analysis is essentially circumstantial evidence, and what the military courts have found is that circumstantial evidence is enough to carry the day, and it can, in fact, be enough to carry the day when somebody shows up in court and says, I didn't do it, and that becomes a question for the trier of fact to determine whether or not they can be reasonably disbelieved. If they don't believe the defendant, if they take a stand, if they don't believe their character witnesses, then they can conclude based on credibility, based on their mannerisms, based on whether they cry, and how they act in the courtroom. That can become a basis. So what's the test here? You said, for example, that you believe there's a permissive inference from the results of the test, circumstantial evidence. Is it a question of substantial evidence? Whether or not the presumption, if you want to call it a permissive inference, or whether or not it's been rebutted or nudged, that's a fact question, isn't it? It ultimately is a fact question. Ultimately, or is it a legal question or a fact question? I'm sorry, Your Honor. What you're trying to do is you start off and you have the drug test. The drug test is positive, and let's just start and say there's a presumption. The presumption can be overcome. Well, again, it's not a presumption. It essentially is sufficient circumstantial evidence. Well, who decided it was permissive evidence as opposed to a presumption? Is there a case? In fact, I would commend the Court to look at the Ford case, which we cite. In the Ford case, 23 military justice at 834 actually goes through the manual for court martial, which is essentially the equivalent of a statute. The manual for court martial is for the United States. It is 23 military justice at 334, which goes through the permissive inference for wrongfulness. In fact, it talks about this, because there are many cases that come up in a court martial context where somebody, not shocking, will say, I didn't do it. Frequently, sometimes you can have actual stories of somebody, I gave this guy cocaine. Sometimes you can actually get somebody to testify. Usually it's a cousin or somebody who said I had a party and I put marijuana in the brownies. And so my cousin, who's an officer or a service member, didn't know. And so I thought it was just a joke, and I thought I was playing a joke on him. You're still not answering my question. I'm trying to decide. I mean, I think Judge Wheeler seemed to think that it may be a question of law, that he was able to decide whether or not this story, the explanation that Wade was telling, overcame the permissive inference. So you have a permissive inference, which is a factual matter, which is sitting here on the scales. And you have Mr. Wade's explanation that somebody spiked my drink. That sits on the other side of the scale. Scales are going like this. So the question is, am I going to decide which way the scale goes as a matter of law, independently here? Or is this basically a factual question, and the question is whether or not substantial evidence supports the decision that was actually made by the decision-maker? The latter, Your Honor. How do I know that? How do you know that? Well, you know that from the precedent of this Court, which says that the review of a collateral review of a nonjudicial punishment under DuMont, the Court of Claims, the predecessor of this Court, says that it's a limited review. It's a substantial evidence review. So what you must do is you must- Well, it's substantial evidence review of a fact question. It's not substantial evidence review of a legal question. I think that's right, Your Honor. And that's why I'm asking you, how do I know whether Judge Wheeler, you know, went off the reservation by treating this as a legal issue? Well, Your Honor, I think, I mean, that is the standard for review from a board of contract, for any military correction board. That is always the standard. It is always substantial review where the decision-maker, the actual decision-maker, the finder of fact here, was not Judge Wheeler, which is what he did, ultimately. Well, can we back up to the question of whether or not Mr. Wade committed the offense? It has to be a fact question, right? Well, yeah. I mean, it ultimately becomes a fact question because this Court, I think, has said in the past that in Heisig and Greig that the job of the Court of Federal Claims is not to re-weigh the evidence. It's not to determine guilt or innocence. Its job is to determine whether or not substantial evidence is- So we're all on the same page. I mean, it seemed to me that the BCNR and the Administrative Board in reviewing reached the conclusion that Mr. Wade loses here based solely on the drug test so that the permissive evidence was not overcome. That is correct, Your Honor. And, in fact, I can point you, in 1006, the record, the BCNR, in fact, looked at all the information. And they said we determined it was not unreasonable for the commanding officer and the Administrative Discharge Board to discount your evidence and completely discount only say you or Mr. Wade. I realize in this case, it's at least your view, that the chain of custody is perfect here, that there was no breach in the chain of custody of your analysis sample. So that you have a situation where from the moment the sample was given straight through, no possibility. Let's take a possibility. I'm curious to know. What happens if a service member wants to challenge your analysis? It's on the ground. Maybe it's not mine. Wants a DNA test. Has Wade asked for a DNA test here? Belatedly, yes, sir. I don't belate. But let's assume that the Navy turns down the request for a DNA test. Is there any recourse? Let me give you a hypothetical. Let's assume the commanding officer that he goes to to ask for your analysis looks him dead in the eye and says, I don't like black people. You know, I give white people DNA tests, but I don't give black people. So that's the fact. So is there a place where that person could go to test that decision? There were several places that he could go. In fact, not only today. Well, just tell me. I mean, is there like you go to court? Is there someplace in the military system that you go to challenge the denial, the turn down of a request for a DNA test? Well, that would create, obviously, a fairly serious concern. Tell me where you go. I mean, is there a name? Is there something in the regulations? In the regulations, it has to go through your command. And that we attach the operation enable instruction to, and that is in our initial brief. And in that it states. The rules say the commanding officer makes the decision, right? As the commanding officer, they made the decision here, turning down Wade saying, I'm not going to give you a DNA test. My question is, is there any recourse? Is there any place that someone can go to challenge that decision? I think, Your Honor, the first place they would go in this circumstance, it could not be approved just by the commanding officer. For example, he could. Well, tell me where you go. Do you have to go to the U.S. District Court? Is it APA cause of action? What is it? I think because this is nonjudicial punishment and separation group circumstances, the nonjudicial punishment, if he had asked for it there before that occurred, that does go to court. You're still not answering my question. Yeah. You see, what I'm concerned about here is that in circumstances like this, the likelihood over a lot of cases is likely that that sample got mixed up. I understand. And what I'm trying to find out is whether or not there's any place where a service member can go when they are convinced that there was a mess-up, that they can go to have that challenged. Or are they stuck with the military decision? Sorry, we think the chain is pure. I think they can go to the board for correction of naval records. That would be one place they could go. After the fact. After the fact. And it bears noting that Mr. Wade did not, in fact, challenge the DNA issue at the BCNR. No, I know what happened in this case. But what I'm worried about is a circumstance in which there is no doubt that the Navy alone makes the judgment call whether or not you get a DNA sample test. With the BCNR, which is a civilian body, the representatives of the BCNR, so it was a three-person panel we have here today, not judges and not lawyers, but civilians who made the decision, and three of them came to the, you know, we had three panels of three individuals who came to the same conclusion on this evidence, that the separation board had done nothing wrong. And so that's one place where it could have been raised. And they could have said, you know, in the hypothetical that you provided, that race was a factor here and this is inappropriate. And then after the BCNR makes a determination, it actually, the Secretary can overrule it. If the BCNR says, no, I don't believe that race is a factor here, it could actually go up to the Secretary of the Navy and then the Secretary of the Navy's office. So there is, in the Navy system itself, and I would say when it comes to a due process issue here, it's something that the Court of Federal Claims legitimately could have looked at. The problem we have here is that it was not raised by Mr. Wade at the BCNR. It was not raised by Mr. Wade at the Court of Federal Claims. It was raised in the decision the day before judgment was entered. But the Court of Claims didn't say that there wasn't a due process problem. Rather, considered that as part of, I guess, the evidence that the court considered when it determined that there wasn't substantial evidence to support the decision below. I think that's right. The trial judge, as I understand it, he threw that into the mix and said, well, in addition to my conclusion that I think Mr. Wade was innocent rather than guilty, I'm bled down that path because I'm disturbed. I think he used the term disturbed or concerned about the fact that the DNA test was denied. I kind of read that as thinking that was additional evidence that supported what was the Court of Claims' ultimate conclusion. I think, and that may have been what he meant to do or meant to say. I read it as it could have been an alternative. It could have been part of it. It wasn't clear to me when I read the decision. Well, let me ask you something else. So on the separation board, there's no written decision for the separation board, correct? There is not, Your Honor. The separation board, and I notice that I'm into my rebuttal time, but I'll keep going. I want to answer your question, Your Honor. There is no written decision because as part of the separation board, there is a finding. They have a finding sheet, and the finding sheet I think you can find at, I think it's, I can get it to you when I get back to my rebuttal. It's 1235 in the record. It's a finding sheet, and that is per Military Personnel Manual 1910-146, which is at 1081-83 in the record, and that is a standard form they use. And it is a recommendation. The separation board's decision is not final. It has to be approved by the commanding officer. And if you read the commanding officer's decision, that's on, I believe, 1023-1025, where he, in fact, goes through the evidence and concludes that it wasn't reasonable, the innocent ingesting defense. He looked at their evidence and he said, I'm looking at this evidence. I just don't find this a reasonable defense. I think you can rely on your analysis. Am I correct? I think I'm correct. Tell me if I'm correct in thinking that in this particular case, Wade has not challenged the fact findings that deal with the chain of custody, the fact findings. I think that's correct, Your Honor. The person who witnessed the urine sample being given, the testimony that it never lost sight. They cross-examined. They had the opportunity to cross-examine these witnesses at the separation board. Mr. Wade was represented by counsel there, and the counsel had the opportunity to cross-examine and challenge that information. And in the letter of deficiency to the commanding officer, before the commanding officer made the decision, they brought these issues up. So he did have the opportunity. I didn't see a challenge to those facts. There were not a challenge to those facts in the court of federal claims or the BCNR, as I understand it, Your Honor. Thank you. Good morning, members of the court. My name is William Casara, and I represent Mr. Wade. This court should affirm the very well-reasoned decision by the trial court, finding that the agency decision was not supported by substantial evidence. I would like to start by answering a question from Judge Slevinger that was raised. I'm a long-term Army JAG person. I can at least give you the answer. There is no interlocutory appeal from the decision by the commander to not retest the sample. I believe that's what the judge was asking. I'm not sure of that, but there is no interlocutory appeal. With response to my opposing counsel's statement, the trial judge never made a statement that Mr. Wade was innocent. As you know, the trial judge simply stated that the Navy had not produced substantial evidence that he had intentionally ingested cocaine. The claims court must set aside any agency action it finds to be arbitrary, capricious, and abuse of discretion, and otherwise not in accordance with the law or unsupported by substantial evidence. The court must review the full record of those parts as decided by a party, and that is the Heisig decision. How much of this depends on credibility, however? Are you asking me at the trial level? Your friend said, well, there were multiple levels here, and I guess certain arguments were raised at some of those levels and not on others. But your friend says this is a circumstantial evidence case, but at some point, given that there was cocaine found, that your client, he didn't want to say there's a rebuttable presumption or whatever, but your client needs to come forward with something, right? And when he does, his excuse, is the review of that excuse just based on the, you know, credibility judgment of the fact finders? No, Your Honor. I mean, it was one of the factors because, as you know, Heisig says that you have to look at the entire record. So it was certainly one of the factors that the trial judge looked at, and he gave a very well-reasoned analysis. You're telling me that Judge Wheeler looked at and analyzed the possibility that your client lost his credibility? Oh, no. There's no mention in Wheeler's opinion of two, actually three times, that your client didn't tell the truth. And so there's no mention in your brief. It's sort of like the elephant in the room. There's an argument by Judge Wheeler. He says, oh, my God, there's something wrong here because it only took him 31 minutes to make up their mind. How long does it take to make a decision when you decide that you don't believe a person who's telling the story? Well, again, Your Honor, I think that is one of the many factors that Judge Wheeler looked at by the time of the deliberations. But you don't address that in your briefs. The time of the deliberations? No, well, the fact that the deciding officials cross-examined your client about falsehoods that he told them. I think we did address the fact that he, certainly in the transcript, that he mentioned why it was that he did not tell his supervisor, his civilian supervisor, at the very beginning what it actually was that he was coming up for a charge of. Oh, yeah. He said, I lied, and here's why I lied. Yes, sir. So he told the deciding officials, the three judges, I don't tell the truth. And just so the court is clear, they are not three judges. They are three officers. They are the decision makers. They were the decision makers, yes, sir. Because your client chose them to be the decision makers. Well, as far as the administrative separation board, Your Honor, that's not actually correct. He does not choose whether to go to an administrative separation board. Well, he chose the procedure that would take him there. Well, even if he had chose, and I think one of the important factors for this court to understand is that even if he had elected trial by court-martial, there is no requirement on the part of the Navy that they actually grant that. And in my experience, it is frequently the case that they will not do a trial by court-martial and will do this type of an administrative board proceeding instead. So in the long run, it's really the Navy's decision as to whether or not to send him to an administrative separation board. But we don't know that here because he didn't request the court-martial proceeding. That is correct. And I think that one of the... When Judge Carpenter talks about one of the white elephants in the room, another one of them is this sort of thought process on the part of the BCNR and on the part of, and most importantly, the administrative separation board, that you didn't elect trial by court-martial because you're guilty. And that is simply not the way that the process works. You can elect trial by court-martial and...  Where is it on the record? Did somebody say you didn't elect trial by court-martial and therefore that proves you're guilty? If you look at the questioning by the administrative separation board members, and granted, the transcript is not very detailed, but there is mention in there where they question him about why he would not... One of the questions from one of the board members was, if you didn't do this, why didn't you ask for a court-martial? And that is in the separation board transcripts. We have the results of the drug test on one side of the scale, as I mentioned earlier. On the other side of the scale, you have your client's explanation that someone spiked his drink, right? That's what's on the scale. I think that is one of the possible explanations. Well, those are the two important things that are on the scale. But the government, the only thing the government has going for it is the results of the urinalysis test. And that has some evidentiary effect sitting there. If I may, Your Honor, on the other side, you have the possibility, as noted by the government, the government's own expert, of an innocent ingestion, but you also have this lingering issue of a chain of custody, which we'll never know about. But the chain of custody, the lingering issue, never goes anywhere because you didn't challenge. The person that took the sample said, I took his sample, I watched it go through. I mean, there's no challenge. I think what he said was, I do a lot of these tests. I don't remember this one in particular. Here is what generally happens. That isn't what he said. He does not say that I actually saw him give a sample. My point is the three people in the separation board look at the evidence and they decide that the Navy wins. The Navy can only win based on the drug test. That means that they did not believe, did not discount it, whatever would be on the other side of the scale. Right? And it's a fact question. So we say to ourselves, well, is there a substantial evidence, is there an explanation for why the deciding persons discounted your clients what he had on his scale? And when the deciding officials themselves brought the credibility of your client into question and asked the questions that satisfied themselves that your client was not telling the truth on one, two, actually on three occasions, then why isn't that an explanation for how the board decided his case? Well, because I think you're on a... Isn't substantial evidence what a reasonable mind could believe on either side? I think that's a fair explanation. So you say, well, the board could have believed your client. They didn't. They believed the Navy. Next case. If there is a reason to support why the board decided the case the way it did, it has the test results and it has its view of your client's credibility. But that's not all that it had. And what concerned the trial judge clearly was the fact that the board did not, or that the Navy, I should say more specifically, discounted other possible issues, the procedural concerns. That judge still noted that the judge sort of didn't say... Let's take the 31-minute decision. Yes, sir. Unblushingly, with a straight face, can you tell me that's a real reason to be worried about what happened here in the decision? I think it is. That only took them 31 minutes to decide? In a vacuum, no. Because they've been at recess for an hour, right? But they've been told not to deliberate previously. That's not the standard instruction. It's just like a jury. You are told do not deliberate until you start your deliberation process. So it's the 31 minutes. That's where the 31 minutes is. It's purely the deliberations process. Were there any other theories that were provided for how this could have been accidentally ingested? Like, for example, the fact that your client had been on hydrocodone for other reasons? Were there any other possible theories? There may well could have been had the Navy allowed the DNA sampling or the retesting of the urine sample. But when the Navy gets to play judge, jury, and executioner, as they do in a case like this, and they say, we're not going to retest your sample, that's the only way to find out whether or not there's a problem with the sample. Not to get too far off the reservation, but I just did a case upon a retest. Was there a due process argument made? Is that argument even before us in this court? I think it is. Because Judge Wheeler says that it was one of the due process concerns that caused him to look at it. But isn't that in the analysis of the substantial evidence, he lists several reasons why he, you know, including he has this thing about the low positive reading, the procedural concerns, flaws in the transcript, the 33 minutes. And then he says, ultimately, all this shows there isn't substantial evidence. So he's not really addressing due process, I don't think. Well, I think he's addressing it in the sense of, like you just said, Your Honor, that is one of the factors that I am looking at in determining that there is not substantial evidence. That's right. So he did not, nobody argued due process before him, and he didn't address it. He is certainly not saying that as a result of the Navy's failure to retest, that is a procedural defect which vacates these proceedings. That is not the case. One of the things the government has said in this case is that the court below, the claims court, reweighed the facts. And I have a particular part of the court's opinion that troubles me, and I just want your response to it. That's right. It's on page 644, left column, and it says, he's addressing this low positive reading of 482. He says, The low level likely does not reflect the actions of someone trying to experience a drug's euphoric effects, but rather is more in keeping with a person's unknowing ingestion of a small amount of cocaine. But didn't the expert say that's one plausible theory? And in fact, another plausible theory is that he had ingested the cocaine the night before. And you have to look it up. Or over the weekend. Excuse me. My apologies, Judge. I think the language that Judge Wheeler quoted is almost directly from Dr. Molinari or Mr. Molinari from the laboratory. Now, in which he says that that is one of. One. Yes, ma'am. Yes, ma'am. Then he says, A low positive reading on a first time offense with no evidence of how the substance was ingested does not establish wrongful use. How is that not sort of reweighing of the expert report, which gave two plausible possibilities from the reading of 482? Because Judge Wheeler was obligated to look at the entire record. So he takes this portion of it and says, This does not establish it in and of itself. Therefore, the permissive inference may not apply. I think it's important that we say that we know that all of the military case law says that the government counsel said the permissive inference is enough to carry the day. That is simply not true. The permissive inference may be enough to carry the day. And what Judge Molinari was. I mean Judge Molinari. What Judge Kennedy Wheeler was saying is, I've got all of these concerns, including the fact that when my client, when Mr. Wade was approached, he was shocked by the results. I have all of these people that have come in and have said, This guy's got a stellar 18-and-a-half-year career, 19-and-a-half years by the time that he is discharged. You combine that with the serious issues about the Navy not being willing to retest it and that their own expert says that a level of 482 could very well just be a result of some sort of an innocent ingestion. I am doing exactly what this court has told Judge Wheeler to do, which is to look at the whole of the evidence and to see whether or not there is a substantial basis for the agency's decision. And he found that there was not. And with all due respect, I don't think that this case is all that complicated in that sense. I think that Judge Wheeler did exactly what this court has asked him to do. Judge Bovender, do you have a question? Well, my concern with Judge Wheeler's opinion is that he, like you, doesn't trust the elephant in the room, which are the three lies. And we all know that judges are impressed by people who don't tell the truth. We're very impressed by people that don't tell the truth. I'm not saying it favorably. When you're listening to testimony, you know this from all sorts of trials, that you lose a case because a judge loses faith in the witness. And when you lose faith in the witness, you don't typically lose a little bit of faith. You lose all the faith. But on the other hand, in this case, Judge, I think very importantly... I appreciate that. But, I mean, the short of the matter is that his... It's true that your client had a very distinguished service. And even as the BCNR is saying, you know, we're sorry about this. But the law is the law. And his explanation is, someone spiked my drink. It is one of the possible explanations. Well, the other possible explanation is that it got in his blood by an act of God. No, the other possible explanation is, as the observer himself said, I didn't see, I don't recall. I don't want to say I didn't see, I don't want to put words in John's mouth. He said, I don't recall this particular test. Here is what we know. I understand that. And when you went to the BCNR and you challenged that, the BCNR said, we have looked at the testimony on the chain of custody, and the chain of custody was unbroken. When they say the chain of custody was unbroken, then it was somebody else's fails. Except for the fact that... The chain of custody is pure. We don't know that, Judge. We know that there has been a decision by the deciding officials that it was. The BCNR said that it was. And in order for you to win on that one, just like winning on the story, you've got to say that there is no substantial evidence to support the chain of custody being pure. And you have not made that show. Judge Wheeler's concerns, this is where Judge Wheeler's concerns regarding the failure to retest come in. Because the decision to retest ultimately is up to the same people who are saying this sample is pure. And that's where you get into the... That's true, that's true. Then you have to wait until the end. That's why I was asking the question on the other side. Because this obviously is a cut point. But the short of the matter is, under the rules, you don't get to question the chain of custody until the end of the game. Until the end of the game. By then, it's gone. Well, I don't know whether the sample's gone by then. The sample's gone after a year. That's the problem. Right. But if you're able to prove that the chain of custody was broken, then you've got a really great data point on the scale we're talking about. Right. But if you failed, you were unable to break the chain of custody. Because, and I'll conclude with this, we're getting into the sort of circuitous reasoning of the Navy says we're not going to retest it. No, I appreciate all that. Because the Navy says the sample's gone. That's because there is no review until after the fact. It's a BNCNR. And we're stuck with that, and you're stuck with that. We would not be stuck with that had the Navy agreed to retest the sample. Well, that's true. But why is the Navy required to retest the sample if they think the chain of custody is pure? Everybody's going to ask to have the samples retested, right? But if you can't make a showing that the chain of custody was imperfect, then you're not going to get a retest. I understand that. Subject to any further questions from the members of the court,  Thank you. Thank you, Your Honor. Your Honor, I just wanted to address particularly Judge Clevenger's question. My distinguished counsel, Lieutenant Commander Adam Yost, mentioned to me a few additional avenues that if a circumstance, the hypothetical you mentioned were in this circumstance, the denial of the urinalysis or any other concern with the commanding officer, there are several other avenues that a service member can go to. They can file a congressional complaint, Your Honor. They can go to the Inspector General's office, and they can also file an Article 138 complaint with the Office of the Secretary of Navy against the commanding officer. Unless the court has any additional questions, we would respectfully request that this court reverse the decision of the trial court and remand with instructions to enter judgment in favor of the United States. I have one question. Yes, Your Honor. The original decision, which was to reduce pay, I believe, grade and pay. Yes, Your Honor. Would that have affected Mr. Wade's retirement? Let's assume that he had not chosen to challenge this if he had taken the initial dose. He wasn't being thrown out. I think it might have if he had been retired, because I think there was a reduction in grade as well. So if he was reduced in grade and then retired, I believe that would have affected his settlement. That's correct, Your Honor. Thank you. You mean like in the, I mean, the retirement pay is based on some calculation and the executive branch, it used to be a high three. So in that respect, is that what you're talking about? It's exactly right, Your Honor. When a service member is retired at a certain grade, that becomes the basis for their retirement pay. And so if you're reduced in pay, as he was, based on non-judicial punishment. Thank you. We thank both sides in the case this evening.